**GLENN A. ZEITZ, ESQUIRE**
Attorney I.D.: 15930
38 Haddon Avenue
Haddonfield, New Jersey 08033
(856) 795-6660

Attorney for Defendant Steven Humes

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| vs. | : | Criminal No.: 06-85 (SLR) |
| | : | |
| | : | |
| STEVEN HUMES | : | |
| | : | |

_____

### <u>MEMORANDUM OF LAW IN SUPPORT OF MR. HUMES' MOTION</u>
### <u>TO DISMISS THE INDICTMENT AS A MATTER OF LAW</u>

## I.    STATEMENT OF FACTS

This matter stems from an earlier state court matter wherein Mr. Humes was convicted of a misdemeanor for accessing for an improper purpose information on a computer hard drive that he had repaired after the owner (Jeanne Ohm) of the hard drive had stopped payment on an $810.00 check she had given him for the repair work without notifying him first of her intention to stop payment.

Prior to, during and after his state court trial, Mr. Humes filed <u>numerous</u> pleadings in both state court and federal court seeking various forms of relief.  While each pleading

had a good faith basis, each was also based on Mr. Humes' untrained understanding of both the law and procedure in both state and federal court matters.

Although Mr. Humes has filed approximately 40 pleadings in both state court[1] and federal court[2], the two-count allegation in this Indictment are limited to a statement referenced in an attachment to a responsive pleading to a motion to dismiss in federal court; a copy of the pleading is attached hereto as Exhibit A.  It is therefore undisputed that the alleged threatening communication was made in the context of litigation that has been ongoing for nearly two years involving scores of pleadings.

For the sake of judicial economy and brevity it is requested that this Court take judicial notice under Federal Rule of Evidence 201 of all the pleadings filed by Mr. Humes in both the state and federal courts.

---

[1]

Sixteen (16) Pleadings in the Court of Common Pleas of Delaware: Motion for Written Response To Depositions; Motion To Compel Justice; Motion for Affirmative Defenses; Motion To Suppress Evidence; Motion To Compel Discovery; Motion for Audio Visual Equipment; Motion To Deny Any Actions That Would Cause Any Delay or Postponement of Trial; Motion To Subpoena Deputy District Attorney Clerk of Assistant; Case Law In Support of Scheduled Motion for Judicial Notice; Motion To Receive Ex Parte Assistance In Issuing Subpoenas; Motion In Further Support of and In Other Matters Concerning Motion for Judicial Notice; Motion for Judicial Notice; Motion To Notify; Motion To Dismiss (two separates motions); and Motion To Exclude.

Nine (9) Pleadings in the Superior Court of Delaware: Notice of Appeal; Motion for Transcripts; Motion for Counsel; Motion for Change of Venue; Motion To Show Good Cause; Motion Opposing Allowing Correction of Clerical Mistake; Motion To Grant Appeal; Opening Brief In Support of Appeal; and Civil Complaint.

Two (2) Pleadings in the Supreme Court of Delaware: Notice of Petition for Writ of Mandamus and Notice of Motion To Proceed In Forma Pauperis

[2]

Thirteen (13) Pleadings in the Federal District Court of Delaware: Complaint; Five (5) Summonses; Praecipe; Motion To Amend Complaint; Emergency Motion for Order of Protection; Letter Brief Requesting Reconsideration of Protection Order; and Three (3) Responsive Briefs In Opposition To Motion To Dismiss.

## II.    ARGUMENT

Federal Rule of Criminal Procedure 12(b)(2) and 12(b)(3)(B) respectively provide

that:

**Motions That May Be Made Before Trial.**  A party may raise by pretrial motion any defense, objection or request that the court can determine without a trial of the general issue.

**Motions That Must Be Made Before Trial** . . . a motion alleging a defect in the indictment or information – but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense;

Federal Rule of Criminal Procedure 12(b)(2) authorizes dismissal of an indictment if its

allegations do not suffice to charge an offense.  United States v. DeLaurentis, 230 F.3d

659, 661 (3d Cir. 2000) (citing United States v. Sampson, 371 U.S. 75, 78-79 (1962)).  On

a motion to dismiss an indictment, the trial judge may only consider those objections that

are "capable of determination without the trial of the general issue" and may not consider

evidentiary questions.  United States v. Gallagher, 602 F.2d 1139, 1142 (3d Cir. 1979)

(citing United States v. Knox, 396 U.S. 77 (1969)).  The indictment in this case is facially

insufficient and must be dismissed because the communication at issue is not clearly

threatening and it is otherwise protected under the First Amendment and the privilege of

protecting statements of parties in the context of litigation.

**A.    The Grand Jury Was Presented With Insufficient Evidence To Properly Indict Steven Humes Under 18 U.S.C.A. §876(c) Because The Communication At Issue Is Not Clearly Threatening; and As Such, the Indictment Is Defective and Must Be Dismissed As A Matter of Law.**

18 U.S.C.A. §876(c) provides that:

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

When determining whether a communication constitutes a "threat" under this statute, there must be competent and credible proof that the recipient feared imminent harm upon being exposed to the communication. United States v. Zavrel, 384 F.3d 130, 136 (3d Cir. 2004).

The Third Circuit has adopted the Second Circuit's definition of a "threat" as:

> a statement expressing an intention to inflict bodily harm to someone of such a nature as could reasonably induce fear as distinguished from idle, careless talk, exaggeration or something said in a joking manner . . . A serious expression of intent to inflict injury and **not merely a vehement or emotional expression of political opinion, hyperbole or arguments against government officials**.

Id. (quoting United States v. Malik, 16 F.3d 45, 51 (2d Cir. 1994) (Bold and Underline Emphasis Added). In his dissent, Judge Stapleton concluded that "threat to injure" under §876 requires the communication to convey that some prospective action will be taken by the sender and that the most appropriate way to determine the criminality of such a communication is to consider what a person receiving it would reasonably perceive the

message to be.  Zavrel, 384 F.3d at 137-38; see e.g., United States v. Alaboud, 347 F.3d 1293, 1296 (11th Cir. 2003) (holding that a communication is a threat when "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor."); United States v. Orozco-Santillan, 903 F.2d 1262, 1265-66 (9th Cir. 1990) (finding that a threat exists when after hearing the message "the listener will believe he will be subjected to physical violence upon his person.").

In Malik, supra, the Second Circuit concluded that whether a given writing constitutes a threat must be measured from an objective standard of proof – i.e., whether "an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury".  16 F.3d at 49 (quoting United States v. Maisonet, 484 F.2d 1356, 1358 (4th Cir. 1973) cert. denied, 415 U.S. 933 (1974)).  In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant.  Id. (citing United States v. Davis, 876 F.2d, 71, 73 (9th Cir.), cert. denied, 493 U.S. 866 (1989)).  An equivocal communication (i.e., letter) with equal chances of being interpreted innocuously or harmfully will not constitute a threat standing alone.  Id. at 50; see also, United States v. Barcley, 452 F.2d 930, 933 (8th Cir. 1971) (where a communication contains language which is equally susceptible of two interpretations – one threatening and the other non-threatening – the Government has the burden of presenting evidence removing that ambiguity).  The communication must be so unequivocal, unconditional, and specific as to convey to the recipient a gravity of purpose and apparent prospect of execution.  Id. at 51.

In Barcley, supra, the defendant sent a letter to his appellate lawyer stating, inter alia, that "as soon as I can get this case situated around in the position I want you are the

first S.O.B. that will go [and the prosecutor] will [go] next." 453 F.2d at 932. Although the Eighth Circuit recognized that it is possible to construe such language as threatening injury, it is also recognized that there are numerous innocuous interpretations which are equally plausible. Id. at 933. The Eight Circuit also recognized that the defendant's letter simply communicated a client's dissatisfaction with the services of his attorney and cautioned that "[s]uch communication falls within the purview of the First Amendment whether phrased in the King's English or peddler's French." Id. When First Amendment considerations apply, courts must be careful to distinguish "[w]hat is a threat . . . from what is constitutionally protected speech." Id. (quoting Watts v. United States, 394 U.S. 705, 707 (1969)).

In this case, the pleading at issue references equal protection concerns, due process concerns and other constitutional concerns which are all protected speech under the First Amendment. See Watts, supra, 394 U.S. at 707. With respect to the alleged threat, it cannot be read and interpreted in isolation. The "threat" must be read in the context of the other statements contained in the pleading itself and the statements made in prior pleadings. The alleged threat is like finding a "needle in a haystack" – a mere sentence or two contained in one pleading of more than 40 pleadings previously filed.

Further, Mr. Humes' mere statement of making a citizens' arrest was not conjured in his own imagination but was based on his untrained understanding of a legal article he had read by a constitutional law attorney named David C. Grossack entitled "Citizens' Arrest"; a copy of the article is attached hereto as Exhibit B. Mr. Humes' reliance on this

legal article clearly refutes the <u>mens</u> <u>rea</u> requirement under both "threat to kidnap"[3] and "threat to injure".

> **B.    In Addition To Not Clearly Constituting A Threat, the Communication At Issue Is Otherwise Protected By the First Amendment and the Privilege of Protecting Statements Made In the Context of Litigation.**

The common law rule protecting statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings from liability is well-recognized in both the State of Delaware and the Third Circuit. <u>Nix v. Sawyer</u>, 466 A.2d 407, 410 (Del. Super. 1983); <u>Silver v. Mendel</u>, 894 F.2d 598, 603 (3d Cir. 1990). The privilege is not narrowly confined to intra-courtroom events, but extends to all communications appurtenant thereto including the "drafting of pleadings". <u>Nix</u>, 466 A.2d at 410 (citations omitted). The privilege applies when the statement is issued as part of judicial proceeding and is relevant to a matter at issue in the case. <u>Barker v. Huang</u>, 610 A.2d 1341, 1345 (Del. Supr. 1992). The relevance of the statement is liberally construed in favor of the pleader. <u>Nix</u>, 466 A.2d at 411 (citation omitted). Further, the interest in encouraging a litigant's unqualified candor as it facilitates the search for truth is deemed so compelling that the privilege attaches even where the statements are offered maliciously or with knowledge of their falsity. <u>Id.</u> (Citations Omitted).

---

[3]

The federal kidnapping statute requires the Government to prove four elements: (1) transportation in interstate commerce; (2) of an un-consenting person who is; (3) held for ransom, reward, or otherwise; and (4) the acts were done knowingly and willingly. <u>United States v. Osborne</u>, 68 F.3d 94 (5th Cir. 1995) (interpreting 18 <u>U.S.C.A.</u> §1201). In this case, there is no proof whatsoever that any of the alleged victims would have been transported outside of the State of Delaware. Further, there is no proof that if any of the alleged victims were actually "kidnapped" Mr. Humes would have received any kind of any kind benefit. <u>See</u> <u>United States v. McGrady</u>, 191 F.2d 829(7th Cir.), <u>cert.</u> <u>denied</u>, 342 U.S. 911 (1951), <u>United States v. Stands</u>, 105 F.3d 1565 (8th Cir.), <u>cert.</u> <u>denied</u>, 522 U.S. 84 (1997), <u>United States v. Childress</u>, 26 F.3d 498 (4th Cir.), <u>cert.</u> <u>denied</u>, 513 U.S. 1157 (1994).

In this case, it is undisputed that the alleged threatening statement was made part of a pleading.  Further, the statement was relevant (and not merely collateral) to Mr. Humes' cause of action because it related to Mr. Humes' equal protection argument.  Mr. Humes motivation was not money or some other illicit (illegal) purpose, but was merely to ensure that all citizens are treated equally and to prevent selective prosecution.  He simply wanted authorities to investigate Jeanne Ohm for the thousands of illegally downloaded songs stored on her computer and others for there alleged illegal (and improper) involvement in his state court prosecution.  Unlike every other reported decision, no overt acts of any kind were taken by Mr. Humes that would demonstrate he intended to carry out a citizens arrest of any of the individuals referenced in this Indictment.  Further, it was (and remains) Mr. Humes' intent that law enforcement make these arrests.

## III.    CONCLUSION

Defendant respectfully requests that the Indictment be dismissed.

Respectfully Submitted:

Dated: September 6, 2006              /s/ Glenn A. Zeitz
**GLENN A. ZEITZ, ESQUIRE**
Attorney for Defendant Steven Humes

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of Defendant's

Memorandum of Law in Support of His Motion To Dismiss the Indictment has been sent

electronically to the following:

> Edmund Falgowski, A.U.S.A.
> United States Attorney's Office
> District of Delaware
> P.O. Box 2046
> Wilmington, Delaware 19809

Dated: September 6, 2006     _____/s/ Glenn A. Zeitz_____
             GLENN A. ZEITZ, ESQUIRE
             Attorney for Defendant Steven Humes

**GLENN A. ZEITZ, ESQUIRE**
Attorney I.D.: 15930
38 Haddon Avenue
Haddonfield, New Jersey 08033
(856) 795-6660

Attorney for Defendant Steven Humes

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

UNITED STATES OF AMERICA      :
            :
            :
       vs.                :    Criminal No.: 06-85 (SLR)
            :
            :
STEVEN HUMES           :
            :

_____

## <u>ORDER</u>

AND NOW, upon consideration of the Defendant's motion and memorandum of law in support of dismissing the Indictment; the Government's memorandum of law in opposition to same; and the arguments of counsel;

IT IS ORDERED, this           day of                 , 2006, that the Defendant's motion is granted.

BY:

                _____
                HONORABLE SUE L. ROBINSON
                United States District Court Judge

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234

IN THE U.S. District Court - District of Delaware

Steven D. Humes )

Plaintiff )

)

v. )    C.A. No. 06-59 KAJ

State of Delaware, )

Court of Common Pleas, et al. )

Defendant(s) )

```
┌─────────────────────────┐
│        FILED            │
│  ┌───────────────────┐  │
│  │   JUL 1 1 2006     │  │
│  └───────────────────┘  │
│    U.S. DISTRICT COURT  │
│   DISTRICT OF DELAWARE  │
└─────────────────────────┘
```
RO scanned

## RESPONSE TO FEDERAL DEFENDANTS

### PLEADING TO DISMISS

The Federal Defendants entire Motion to dismiss is based
upon what they call their rights to determine their own
response and reaction to the laws. The fact is the Federal
Government's agencies; the F.B.I., has a responsibility to
the constitution and all Americans to defend the laws and
insure that the States are allowing equal access to them.
Neither the State of Delaware nor the Federal Authorities

have any right implied or otherwise to deny equal access to those laws, and they have done so by not applying the laws fairly and proportionately to all parties. The F.B.I. is not protecting Steven Humes's rights to life, liberty, and property by allowing him to be victimized thus denying fair and equal justice.

The Plaintiff maintains that without an investigation into the alleged criminal acts of all parties; including the Plaintiff that the State of Delaware had no possible reason to prosecute. Without the investigation; that the Plaintiff clearly asks for, the State could not possibly or legally have presented a case to which a verdict could have been rendered. Yet a verdict was rendered without justice.

Without the investigation:

1. The alleged criminal acts were e-mail related. There was no investigation or any evidence presented showing that the e-mails were sent from a computer in Delaware.

2. The State did not take a statement or present evidence from; Tim Kreider, Feddly Jeanniton, or Ben Rybinski.

a. Tim Kreider: the envoy sent by Jeanne Ohm to allegedly bring the hard drives to the Delaware Store from Pennsylvania.

b. Feddly Jeanniton: The contractor who entered into a contract with the computer store and actually performed the data recovery.

c. Ben Rybinski: The computer store clerk who met with Tim Kreider and entered into the sales agreement with him.

3. The police did not enter any of the properties; the store, residences, or business locations, and look at the computers, the data, or any e-mails.

Without the investigation; the plaintiff was charged and convicted, despite the fact that the State of Delaware could not show that a crime was committed or took place in Delaware. The Delaware State Trooper acknowledges that he did not authenticate any e-mails, look at any computers, talk to any witnesses or go to any locations. Trooper Lafferty arrested the Plaintiff based on a statement that he gave saying that he sent e-mails to chiropractors. There was no mention from what State or location these e-mails were sent from or to.

The State of Delaware witness Jeanne Ohm presented two e-mails that were alleged to be criminal acts in Delaware that she stated were received at a computer in Pennsylvania. Jeanne Ohm never met with anyone from the computer store in Delaware. These e-mails were faxed to Trooper Lafferty from Pennsylvania.

Without the INVESTIGATION the State of Delaware proved that two faxed e-mails showing the Plaintiffs name may have been received at a (unknown device) in an (Unknown State or Country) sent from a (unknown device) from (Unknown State or Country).

The Plaintiff was not hiding that e-mails were sent he wanted and asked for an investigation. The Plaintiff provided the witness names and how to contact them. The plaintiff provided information on how to authenticate an e-mail; where it was sent from and to. The Plaintiff filed several motions about the admissibility of evidence hoping that the State would then investigate.

Why did the Plaintiff want an investigation; and still does, because the actual evidence would show that the Plaintiff committed no crimes and that he was indeed the victim in this matter?

The State of Delaware is not compelled by the Plaintiff's desires to have someone charged with a crime. The State of Delaware's is compelled by the Laws, the rules of evidence, the Plaintiff's right to receive a fair trial and the integrity of justice to have performed this investigation and applied the laws as written.

As for Judge Smalls and the Court of Common Pleas; the Plaintiff filed numerous motions about the lack of evidence, lack of investigation, that no crime occurred, clarity of the laws, judicial notice, and affirmative defense, admissibility of evidence and jurisdiction of the alleged criminal act.

The Plaintiff states that he was convicted because Judge Smalls insured that he was not able to present a defense. The Plaintiff was not allowed to question the character of the witnesses or the investigation, Plaintiff couldn't question Tim Kreider, Plaintiff could not question where the e-mails were sent from or who received by (authentication), Plaintiff could not question the contract or remedies of Delaware Law regarding Sales, Plaintiff could not argue that his actions were legal based on an affirmative defense, Plaintiff could not argue the

vagueness of the law, Plaintiff could not question alleged
other e-mail recipients (none were in court and one of them
was dead), Plaintiff could not even question his own
witnesses because the court did not subpoena them.

This civil action before you screams for federal
intervention. The State of Delaware denied Plaintiff,
Steven Humes, his constitutional rights to a fair trial,
equal access to the laws, and denied him property, a life,
and liberty. Without the investigation Plaintiff had no
chance of a fair trial, without judicial integrity
Plaintiff had no chance for a fair trial, with
prosecutorial misconduct Plaintiff had no chance for a fair
trial.

It should be obvious to your court that the State of
Delaware is still attempting to cover up their actions and
claiming that the Plaintiff is receiving legal remedies
available to him in State court. If what the Plaintiff
states are indeed the facts then an appeal should have
already been granted. The only reason the appeal is taking
approx. two years is the statue of limitations on filing
civil actions. The Plaintiff is concerned that this cover
up is going to deny him his appeal and it is not likely the
Delaware Supreme court will take further action. Judge

Brady was the Attorney General during this wrongful prosecution, now Supreme Court Justice Brady.

The Plaintiff is not an attorney and is looking to the federal authorities, judicial system and the U.S. Attorney to protect his rights. It is very clear the State Of Delaware intends to use all of its authority and power to insure that the Plaintiff does not receive justice.

I will not allow any organization to crap all over the constitution and call me criminal because they don't have the decency, the humanity to respect the written laws. The State of Delaware has taken issue not just against Steven Humes but against all that can't afford justice, that can't afford the constitution and the bill of rights. The authorities in the State of Delaware are unconscionable, without morals, and lack the integrity to enforce their own laws. They clearly stand on the wrong side of decency.

"The Federal and State Defendants do not have the right to deny the Plaintiff his constitutional rights to Life, Liberty, and Justice by picking and choosing which laws to enforce, which crimes to investigate, and what citizens to protect."

I have attached a sworn statement detailing crimes that
have been committed against me by the Delaware authorities
and Jeanne Ohm. If the F.B.I. or responsible authorities do
not perform their duty to investigate and then arrest these
individuals then I will. The constitution is clear that I
have a right to protection of the laws and the right to
self arrest if necessary. If this court and the Federal
authorities allow justice to be delivered to whom they wish
to protect based on their argument; then please tell them
to stand aside and watch me deliver my own justice in
accord with the laws and constitution as if it were 1899. I
will proceed under protection of the laws and the
constitution and make these arrests myself and any attempt
to stop me will be a felony and against my constitution
rights.

Wherefore, Plaintiff requests this honorable court to deny
the Defendants motion to dismiss and order the F.B.I. to
perform its duty and investigate the named authorities from
the State of Delaware for violations of Color of Law, trial
fixing, obstruction of justice, jury tampering, witness
intimidation, official misconduct.

Plaintiff

Dated: ~~April 3~~, July 18, 2006

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234

---

### IN THE U.S. District Court - District of Delaware

| | | |
|---|---|---|
| Steven D. Humes | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. 06-59 KAJ |
| | ) | |
| State of Delaware, | ) | |
| Court of Common Pleas, et al. | ) | |

**ORDER**

**NOW TO WIT**, this day of _____, 20__, Defendants Motion for Dismissal is hereby denied.

IT IS SO ORDERED.

_____

J.

Steven D. Humes

4838 Plum Run Court

Wilmington, Delaware 19808

(302) 598-9234

---

IN THE U.S. District Court - District of Delaware

Steven D. Humes              )

Plaintiff                    )

v.                           )      Case No. 06-59 KAJ

State of Delaware,           )

Court of Common Pleas, et al. )

### CERTIFICATE OF SERVICE

I, *Steven D. Humes*, do hereby certify that two (2) copies

of the attached Notice of Motion, Motion and Order were

*delivered by first class mail* to Stephani J. Ballard,

Deputy Attorney General, 820 N. French Street, Wilmington,

DE 19801, and Patricia Hannigan, Assistant U.S. Attorney

1007 N. Orange Street, Suite 700, Wilmington, DE 19899-2046

this day of 21 February 2006.

---

Plaintiff

Dated: March 20, 2006

July 9, 2006

Alberto R. Gonzales
U.S. Attorney General
900 Pennsylvania Avenue
Washington, D.C. 20530

I have pleaded for almost three years with the authorities to investigate and see that
justice is served equally to all in what could be referred to as the "Ohm" matter. It is
impossible to accept being charged with a criminal offense without any investigation and
with written laws supporting my actions as legal. I had called for an investigation prior to
the criminal charge being filed against me, after I was arrested, and now after my
conviction at a rigged trial. The response of the Delaware State Police, the F.B.I., the
Delaware State Courts and the Federal Courts is as stated below.

The Federal Laws, Constitution and the Delaware State Laws are at the discretion of the
authorities to uphold, ignore, or enforce. As citizens we have no rights to any protections
against crimes or to the protections of the written laws and constitution without the
authority's willingness and approval. This is as quoted in the responses to my letters and
legal filings.

Pages 5 and 6: STATE OF DELAWARE'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

As a result of the authorities ignoring my pleas for justice and equal access to the written
laws and their protections; I am left with no other alternative than to enforce these laws
myself. Besides the charges against Jeanne Ohm for her actions, I am charging a judge,
the prosecutor, and a state police officer with, felony obstruction of justice, conspiracy
and misuse of their official offices. The charges, although somewhat complicated, rely
upon this simple undisputable fact. "NO INVESTIGATION HAS EVER OCCURRED
IN THIS MATTER BECAUSE IT WOULD SHOW THAT I WAS COMPLETELY
INNOCENCENT" and without an investigation it is technically impossible to state that a
crime was ever committed. Without an investigation into any alleged crime it would be
impossible to prosecute or obtain a conviction in a court of law. This is especially true for
a computer crime which would require even more physical evidence. The fact that I was
charged, prosecuted, and convicted without any investigation or evidence is enough to
state that I was conspired against to be found guilty. It is more disturbing that I was
convicted for misuse computer data when the laws represent that it was my own data
being used in a legal way. The motive for the Delaware Authorities criminal actions is
detailed below.

Page 6: STATE OF DELAWARE'S REPLY IN SUPPORT OF MOTION TO DISMISS
COMPLAINT

Steven Humes cannot legally assert a claim of wrongful prosecution or false arrest if he
was convicted.

"... one of the elements of such a claim is that the criminal proceeding be resolved in his
favor."

These alleged crimes were committed to harm Steven Humes and protect the reputations and positions of these named conspirators.

Despite what the State of Delaware authorities contend in their briefs, that no citizen has the right to call for the arrest of another, that it is their responsibility to insure justice by selectively charging and prosecuting based upon proper procedure. Surely such procedures would include a thorough investigation into criminal charges. In this case there was no investigation and this charge was brought on behalf of a citizen with no legitimate or legal reason, it was a phone call from a State Policemen friend of the so called victim Jeanne Ohm that brought about this "blue justice".

It is my position that the arrests as detailed in the attached "Sworn Statements" are going to occur and that these prosecutions will also occur. I intend to carry them out myself if the authorities refuse. The constitution supports an individual's right to perform arrests and to the protections of the laws, to self prosecute if necessary. If the State or Federal authorities do not bring these charges, or at least bring them before a grand jury, and then perform these arrests within 15 days of receipt of this letter, I will immediately precede in an armed and legal way to make these arrests myself, just like in the early 1900's, when guns were necessary to enforce equal justice.

There will be no further communication from myself. All the evidence you need to present this matter to a grand jury or make these arrests is being held by the State of Delaware or has been scanned onto my website.

As crazy as this all sounds, my actions are not unjustified or suicide by the police. They are the result of thoughtful consideration. If the authorities are allowed to pick and choose what laws to enforce, what alleged crimes to investigate, and what people to protect, then no American without political influence or monetary power is backed by the constitution or protected by the laws. Without the constitution to protect our liberties and rights then we are not really Americans. If I am to sacrifice myself, possibly my life, then it should be called what it truly is. I am defending the constitution and its true meaning of liberty and justice for all.

I have two small children that deserve to have a good father but I would be less than a man and father without honor if I choose to back away from my convictions and allow these criminal authorities to make me less than the American I was born.

Sincerely,

*Steven D. Humes*

00000030

## NOTICE TO THE AUTHORITIES:

The charges sworn to in my affidavits stand as arrest warrants against the individuals they name. I cannot force you to perform your duties and investigate and prosecute the crimes committed against me, but I can exercise my constitutional rights. Those rights allow me to make these arrest myself if necessary and to prosecute them also. Any attempt by any individual(s) or organizations to stop these arrest will be felonies and in violation of the laws.

The sale of the data is legal based upon the simple truth that I own it. (See the receipt from FAJ Systems) This receipt verifies that the data and drive are the property of Steven Humes as a conclusion of Delaware Law. If the police and Delaware Attorney General are too ignorant to read their own laws then they had better read what's below and take it to heart.

** THE FIRST ARREST WAS A FALSE ARREST. ANY ATTEMPT AT A SECOND WILL BE AN ARMED ASSAULT AND I WILL DEDFEND MYSELF WITH EVERYTHING I HAVE. **

The attempted harassment by the Delaware courts sending armed Capitol Police to my house to intimidate me will not be tolerated.

** ANY FURTHER ATTEMPTS TO THREATEN, HARRASS, OR INTIMIDATE ME BY ARMED PEOPLE WILL BE MET WITH AN APPROPRIATE RESPONSE. **

I have no intention of backing down from my constitutional rights and the evidence to support my claims is undeniable! My constitutional rights allow me to carry arms, to the protections of the written laws, and to defend myself.

The only way this matter will be resolved is through the enforcement of the laws either by you, or by me. You will both do your jobs and defend the written laws fairly or I will do it for you.

It's not true "THAT YOU CAN'T FIGHT CITY HALL". You simply need to be willing to die to do so.

I really didn't want this confrontation and have exercised every possible alternative. However, it is against the law to convict a person who is innocent simply to protect against legal actions. Yet that is what happened.

Steven D. Humes

00000031

CHARGES AGAINST Judge Alex Smalls, Trooper Lafferty and Shawn Martyniak:

## AFFIRMATION STATEMENT:

I, Steven D. Humes of 4838 Plum Run Court, Wilmington, DE 19808, under oath or affirmation, and to the best of my knowledge, information, and belief swear that the following statements are true and factual under penalty of perjury.

I state that Judge Smalls, Head Justice Court of Common Pleas for the State of Delaware did conspire with the Deputy Attorney General Shawn Martyniak, and Delaware State Trooper Lafferty to intentionally use their positions to influence and cause the outcome of a trial against a clearly innocent person, Steven Humes.

## ACTIONS CONSTITUTING THE CRIMES:

1. Trooper Lafferty charging Steven Humes with a computer crime **without any investigation or supporting evidence**. The charges were based upon fax copies of alleged e-mails. The Trooper, nor anyone else, interviewed any witnesses, looked at any computers, or went to any location. Trooper Lafferty was on vacation during the period that an investigation should have occurred.

2. This charge and arrest were based upon **blue justice, as a favor to the Pennsylvania Police Trooper Caponi (friend of Jeanne Ohm).**

3. The investigation that was asked for, **in a documented letter to Trooper Lafferty,** prior to the false arrest would have shown as Steven Humes stated that the hard drive and data was his property and that I.C.P.A. was committing fraud, lying to authorities, using illegal software, downloading and commercially using non purchased music files, and under false pretenses acquiring software, data, and computer services.

4. **Shawn Martyniak knew that the data was recovered** and intentionally helped to cover that fact up by **hiding witnesses and statements from Steven Humes.**

5. Shawn Martyniak knew that a crime was committed against Steven Humes and covered it up in order not to expose the Delaware State Police to charges and litigation.

6. **Judge Smalls lied** about reading and then ruled on the Motion of Judicial Notice. He then allowed Shawn Martyniak to present whatever he wished about the contract without any response from Steven Humes being allowed.

7. At this trial Steven Humes was **denied witnesses, denied counsel, denied the right to question and cross examine witnesses against him, unsupported testimony was allowed, documents withheld, and was not allowed to present the hard drive and data as evidence without taking the stand.**

8. Upon taking the stand the Judge Smalls then allowed evidence that was withheld to be presented in a planned ambush.

9. Despite the fact that s no investigation ever occurred and there is mounds of supporting evidence and the written laws of Delaware supporting Steven Humes' claims, <u>he was convicted at this rigged trial.</u>

10. <u>Steven Humes sent over twenty written request</u> to the police, Department of justice, and the courts seeking fair application of the laws.

11. Jeanne Ohm, during the trial, with the knowledge of Shawn Martyniak did <u>approach and offer to pay money to Feddly Jeanniton, a defense witness, in order to hide evidence.</u>

12. Steven Humes has requested that this matter be investigated to the Captain of the Delaware State Police Troop 2, Trooper Lafferty, The Delaware Attorney General, Shawn Martyniak, Judge Smalls, The Delaware Supreme Court, The F.B.I., The United States Department of Justice, Delaware State Police Internal Affairs, The Delaware Governors Office, and upon appeal to Superior Court.

<u>Still to this day no investigation of any kind has occurred. It is impossible to charge, arrest or convict anyone of a crime without an investigation or any evidence. Yet that is what happened.</u>

<u>FACTUAL ALLEGATIONS:</u>

Steven Humes was caused to appear before Judge Smalls of the State of Delaware Court of Common Pleas in a criminal matter (Case No. 0402006855). Steven Humes states that Judge Smalls did use his official position as Head Justice of the Court of Common Pleas to intentionally influence the outcome of the trial in favor of the State of Delaware. As supporting evidence;

**Attachments: Letter to Trooper Lafferty, Letter to Delaware internal Affairs, Letter to F.B.I., Letter to Delaware Attorney General, Federal Suit seeking to compel the F.B.I. to perform an investigation, Letter to Captain Troop 2, Supreme Court Motion asking to compel an investigation, Letter to Department of Justice, Motion of Judicial Notice (part 1, part 2, part 3).**

The hard drive sold to Atlantech Computer by FAJ Systems with the included data is subject to Delaware Statutes Title 6 Article 2. These Statutes clearly point out that the hard drive and included data are the property of Atlantech Computers. This statement is not disputable and a conclusion of written law.

**Attachments: FAJ SYSTEMS receipt, receipt of data recovery software, screen shots of the data showing time of recovery and completeness, receipt for product sold to I.C.P.A., cancelled check, statement to PA Attorney General fraudulently claiming no data was recovered.**

**\*\* All attachments are on the website www.delawarejustice.org \*\***

The returned hard with all the original data on it is being held by the Delaware Court of Common Pleas. There are multiple copies.

<u>STATEMENT OF SUPPORTING EVENTS:</u>

In a motion hearing that Judge Smalls presided over he was caused by the defendant (Steven Humes in this action) to hear and rule on a matter of Judicial Notice. This motion was approximately 100 pages and the embodiment of several viable and legitimate defenses, such as claiming legitimate ownership of the data that Steven Humes was charged with misusing. This motion hearing was abrupt and displayed that Judge Smalls had not read any part of the Motion. Judge Smalls' initial ruling was this, "That no such Motion existed".

This Motion was based upon the written Delaware Statutes which asked Judge Smalls to resolve the issue of Delaware Law Title 6 Article 2:

(4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. <u>Such revesting occurs by operation of law and is not a "sale".</u> (5A Del. C. 1953, § 2-401; 55 Del. Laws, c. 349.)

Neither party could reasonably question the accuracy or dispute: "was the item paid for". The undisputed answer is no, the check was cancelled for whatever reason. The hard drive and the data were returned to Atlantech.

Steven Humes alleges that this allegation is a matter of court record; see the Motion Hearing October 12th, 2004, that the State of Delaware Attorney Generals office and Judge Smalls claimed that they either did not receive or have in their possession any copies of this motion for Judicial Notice. Steven Humes states that at the Motion Hearing on October 12th, 2004 he was to provide an additional copy of the Motion for Judicial Notice for the Court and a list of witnesses to be called at trial. The copy of the Motion for Judicial Notice and the witness list were provided to the court by Steven Humes on October 20th, 2004. Steven Humes states that Judge Smalls and the State of Delaware Attorney Generals office at the scheduled hearing on October 22, 2004 pretended to have forgotten or were unaware that this motion for Judicial Notice was scheduled and to be heard. Steven Humes states that Judge Smalls; when asked by Steven Humes about being heard on this Motion of Judicial Notice then questioned his court assistant and was given the copy of the motion supplied to the court on October 20, 2004. Steven Humes states that Judge Smalls at that time open a sealed

envelope that contained the copy of the Motion for Judicial Notice and supporting documents, approximately 100 Pages, and within less than three minutes claimed that he read and duly considered this motion and then denied it. The sealed envelope supplied to the court also contained the list of 10 witnesses ordered by the Court of Common Pleas. During the trial Judge Smalls falsely stated that he had read the motion for Judicial Notice.

Judge Smalls' actions were to deliberately deny justice and to assist the Delaware State Police and Department of Justice in covering up a false arrest and wrongful prosecution raised and supported by this Motion of Judicial Notice. Judge Smalls was aware of Steven Humes' intentions to pursue legal action against the Delaware State Police and knew that a guilty verdict would severely hurt Steven Humes' case. Judge Smalls' actions and rulings throughout this matter when applied in whole show that the trial was manipulated to insure that no viable defense could be presented and guaranteed the State of Delaware's victory.

In summary Steven Humes was lied to by the Judge and Prosecuting Attorney, the court allowed evidence to be presented on behalf of a man that's been dead since 1993, not a single witness from the court ordered witness list was subpoenaed or caused to be at the trial by the State of Delaware, Steven Humes was not allowed to question the honesty or integrity of any State witness, the court allowed the prosecutions witness testimony whether they were present or not, the Court allowed the prosecutor to testify where the crime was alleged to occur without any factual basis supporting evidence or witness account, the court allowed the prosecution to withhold discoverable evidence that was requested several times by Steven Humes, this evidence was later allowed over objection that could not be argued, the court did not allow that argument, the court did not allow counsel to be appointed, Steven Humes was threatened with jail if he did not proceed without counsel, there are so many violations of the rules of evidence, his constitutional rights, and the Court of Common Pleas rules that to list them all is not practical.

Judge Smalls by way of his official misuse of his office and personnel did intentionally deny Steven Humes any and all viable and legal defenses proposed, deny counsel, deny witnesses, deny questioning of States witnesses, deny examination of the evidence against him, allow any evidence or statement against him whether it was supported by testimony or not. The support for these allegations is in the Transcripts that took over seven months to prepare for a two day trial. Steven Humes alleges that the Transcripts are false in parts, leaving out information further detailing the Court of Common Pleas actions of bias. Judge Smalls specifically assigned himself to be the trial Judge in this matter to oversee the State of Delaware's guaranteed victory. Judge Smalls assigned himself after the State canceled the original trial and rescheduled because Steven

Humes had the audacity to show up at the first trial with witnesses and legal assistance.

Judge Smalls intent and actions were in conspiracy with Shawn Martyniak, the Prosecuting attorney, to cover up the truth and to harm Steven Humes. <u>Shawn Martyniak did also by way of advice cause Jeanne Ohm to offer a financial payment to Steven Humes' witness in order to interfere with his testimony.</u>

## THE ACTUAL CRIMINAL CHARGES VIOLATED:

§ 1211. Official misconduct; class A misdemeanor.

A public servant is guilty of official misconduct when, intending to obtain a personal benefit or to cause harm to another person:
(1) The public servant commits an act constituting an unauthorized exercise of official functions, knowing that the act is unauthorized; or
(2) The public servant knowingly refrains from performing a duty which is imposed by law or is clearly inherent in the nature of the office; or
(3) The public servant performs official functions in a way intended to benefit the public servant's own property or financial interests under circumstances in which the public servant's actions would not have been reasonably justified in consideration of the factors which ought to have been taken into account in performing official functions; or
(4) The public servant knowingly performs official functions in a way intended to practice discrimination on the basis of race, creed, color, sex, age, handicapped status or national origin.
Official misconduct is a class A misdemeanor. (11 Del. C. 1953, § 1211; 58 Del. Laws, c. 497, § 1; 61 Del. Laws, c. 327, § 1; 64 Del. Laws, c. 48, § 1; 67 Del. Laws, c. 130, § 8; 70 Del. Laws, c. 186, § 1.)

and

§ 512. Conspiracy in the second degree; class G felony.

A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, the person:
(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy.

Conspiracy in the second degree is a class G felony. (11 Del. C. 1953, § 512; 58 Del. Laws, c. 497, § 1; 59 Del. Laws, c. 203, § 7; 67 Del. Laws, c. 130, § 8; 70 Del. Laws, c. 186, § 1.)

This sworn statement includes two previously sworn statements in attachment.

Each of the above allegations is a documented fact and cannot be disputed without lies or deceit.

Affiant: _____
Steven D. Hayes
4838 Plum Run Court
Wilmington, DE 19808

Sworn and subscribed before me this ___1st___ Day of ~~May~~ June AD, 2006

_____

DINA BOLE
NOTARY PUBLIC
STATE OF DELAWARE
My Commissio.. _xpires March 21, 2010

## CHARGES AGAINST JEANNE OHM:

Please immediately file Felony Charges against Jeanne Ohm, All I.C.P.A Board Members and Tim Kreider for Delaware State Code Title 11 Article 933 Theft of Computer Services. § 933.

A person is guilty of the computer crime of theft of computer services when the person accesses or causes to be accessed or otherwise uses or causes to be used a computer system with the intent to obtain unauthorized computer services, computer software or data. (64 Del. Laws, c. 438, § 1; 70 Del. Laws, c. 186, § 1.)

(d) A person committing any of the crimes described in §§ 932-938 of this title is guilty in the fourth degree when the damage to or the value of the property or computer services affected exceeds $500.

Computer crime in the fourth degree is a class G felony.

and

§ 841. Theft; Class A misdemeanor; restitution.
(a) A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it. Theft includes the acts described in §§ 842-846 of this title.
(b) A person is guilty of theft if the person, in any capacity, legally receives, takes, exercises control over or obtains property of another which is the subject of theft, and fraudulently converts same to the person's own use.

I have attached my affirmed statement and it has been duly notarized.

Previous Affirmation Statements:

**I, Steven D. Humes of 105 Pleasant Valley Avenue Moorestown, NJ 08057, under oath or affirmation, and to the best of my knowledge, information, and belief swear that the following statements are true and factual under penalty of perjury.**

I, Steven Humes, who managed Atlantech Computer 110 Fox Hunt Drive Bear, DE 19701 do hereby swear that on or about 01/03/2004 Tim Kreider brought in two hard drives from I.C.P.A., Ohm Chiropractic, and Makin Miracles. Jeanne Ohm authorized that the hard drives be brought to Atlantech Computer. At the Atlantech computer location by way of written and verbal contract Jeanne Ohm, I.C.P.A. and Tim Kreider did authorize Steve Humes, Atlantech Computer, and its contractors to perform services to those hard drives. These services required

the use of Atlantech Computer's and its Contractors computer systems, Software resources, knowledge and skills to provide data recovery on those hard drives. The hard drives in question had lost any and all useable data. The data was over 95% recovered by Atlantech Computer and was fully usable. It was then turned over to Jeanne Ohm on or about 1/10/2004. In exchange for the recovered data I.C.P.A. wrote a check for $810.00. After, Jeanne Ohm and I.C.P.A., Ohm Chiropractic, and Makin Miracles gained use of the lost data they stopped payment on the check and made fraudulent claim that the data was not recovered or usable and returned the products to Atlantech Computers. I.C.P.A., Ohm Chiropractic, Makin Miracles are presently using the recovered data without authorization from Atlantech Computer. Under Delaware Code Title 6 Article 2 Sales the data belongs to Atlantech Computer. Mr. Humes has contacted I.C.P.A. and specifically demanded that they stop using the data or purchase the products under the contract and per Delaware State Code Title 6 Article 2 Sales.

**CHARGES AGAINST State Police:**

Please charge Delaware State Trooper TFC Lafferty SGT Susan Jones both of Troop 2 Bear, DE and PA State Trooper Caponi of the Media, PA Barracks with:

§ 1211. Official misconduct; class A misdemeanor.

A public servant is guilty of official misconduct when, intending to obtain a personal benefit or to cause harm to another person:
(1) The public servant commits an act constituting an unauthorized exercise of official functions, knowing that the act is unauthorized; or
(2) The public servant knowingly refrains from performing a duty which is imposed by law or is clearly inherent in the nature of the office; or
(3) The public servant performs official functions in a way intended to benefit the public servant's own property or financial interests under circumstances in which the public servant's actions would not have been reasonably justified in consideration of the factors which ought to have been taken into account in performing official functions; or
(4) The public servant knowingly performs official functions in a way intended to practice discrimination on the basis of race, creed, color, sex, age, handicapped status or national origin.
Official misconduct is a class A misdemeanor. (11 Del. C. 1953, § 1211; 58 Del. Laws, c. 497, § 1; 61 Del. Laws, c. 327, § 1; 64 Del. Laws, c. 48, § 1; 67 Del. Laws, c. 130, § 8; 70 Del. Laws, c. 186, § 1.)

and

§ 512. Conspiracy in the second degree; class G felony.

A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, the person:
(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy.
Conspiracy in the second degree is a class G felony. (11 Del. C. 1953, § 512; 58 Del. Laws, c. 497, § 1; 59 Del. Laws, c. 203, § 7; 67 Del. Laws, c. 130, § 8; 70 Del. Laws, c. 186, § 1.)

I also want these Officers charged with unlawful arrest and detainment, filing a false written statements, abuse of official authority, and any other applicable crimes that these unfit and corrupt Troopers performed.

Previous Affirmation Statement:

I, Steven D. Humes of 105 Pleasant Valley Avenue Moorestown, NJ 08057, under oath or affirmation, and to the best of my knowledge, information, and belief swear that the following statements are true and factual under penalty of perjury.

I, Steven Humes, was the manager of Atlantech Computer 110 Fox Hunt Drive Bear, DE 19701 state that on or about 01/21/2004 that PA State Trooper Caponi did effectively state to myself that if I attempted to collect a debt owed Atlantech Computers by I.C.P.A. that I would "Regret it and he would see to it that I was charged with extortion". I did state the data was in fact mine to sell, auction, or otherwise depose of under Delaware law if I.C.P.A. did not pay for it. I believe this phone call was recorded and asked that the Delaware State Police take immediate measures to acquire the recording. It is my claim that Trooper Caponi utilizing his official capacity did cause and unlawfully influence the Delaware State Police TFC Lafferty to wrongfully charge Steven Humes with the criminal act of Misuse of Computer Information. The Officers intentionally chose to ignore facts and refused Steven Humes equal justice. The Officers statement resulting in the arrest of Steven Humes is 100% false. The

Officers conspired to falsify reports (claiming that Steven
Humes admitted to sending a derogatory e-mail to a dead
man) and falsely obtain an arrest warrant for Steven Humes.
The Officers ignored Steven Humes claim that a crime was
committed against Atlantech Computers. Trooper SGT Susan
Jones of Troop 2 Fraud Unit was contacted by Steven Humes
to look into a possible fraud concerning the cancelled
check from I.C.P.A. Trooper SGT Jones didn't even give
Steven Humes the courtesy of taking an official statement
or investigating the matter. If Trooper SGT Jones, TFC
Lafferty, of PA State Trooper Caponi had done even the most
routine investigation they would have discovered that
Jeanne Ohm's; of I.C.P.A., statement was false and that the
data was recovered. Isn't that fraud?

Affiant:

Steven D. Humes
105 Pleasant Valley Ave
Moorestown, NJ 08057

Sworn and subscribed before me this _18TH_ Day of _~~July~~ Aug_
AD 2004

Colleen Hannan

COLLEEN HANNAN
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7/19/2009

00000041

# Citizens' Arrest

### By David C. Grossack, Constitutional Attorney

Common Law Copyright © 1994
All Rights Reserved

Not long ago the politically correct *Boston Globe* noticed a "shocking" new trend. It seems as if some citizens of Massachusetts were so fed up with crime that they have begun to intervene in petty street crime afflicting the streets of our cities. Thieves and pickpockets in Massachusetts should exercise caution in where and how they ply their craft as the chances that vigilantes pummel them and drag them to the nearest cop are definitely on an upswing. While the *Globe* is shocked at this healthy trend, students of the law should note that both a statutory and common law basis for a certain degree of "vigilante behavior" is well founded. Indeed, in an era of lawlessness it is important that readers be advised as to their lawful right to protect their communities, loved ones and themselves by making lawful citizens' arrests. The purpose of this essay is to simply explain the law and the historical context of the citizen's arrest.

First, what is an arrest?

We can thank *Black's Law Dictionary* for a good definition: "The apprehending or detaining of a person in order to be forthcoming to answer an alleged or suspected crime." See *Ex parte* Sherwood, *(29 Tex. App. 334, 15 S.W. 812).*

Historically, in Anglo Saxon law in medieval England citizen's arrests were an important part of community law enforcement. Sheriffs encouraged and relied upon active participation by able bodied persons in the towns and villages of their jurisdiction. From this legacy originated the concept of the *posse comitatus* which is a part of the United States legal tradition as well as the English. In medieval England, the right of private persons to make arrests was virtually identical to the right of a sheriff and constable to do so. (See Inbau and Thompson, *Criminal Procedure*, The Foundation Press, Mineola, NY 1974.

A strong argument can be made that the right to make a citizen's arrest is a constitutionally protected right under the Ninth Amendment as its impact includes the individual's *natural right* to self preservation and the defense of the others. Indeed, the laws of citizens arrest appear to be predicated upon the effectiveness of the Second Amendment. Simply put, without firepower, people are less likely going to be able to make a citizen's arrest. A random sampling of the various states as well as the District of Columbia indicates that a citizen's arrest is valid when a public offense was committed in the presence of the arresting private citizen or when the arresting private citizen has a reasonable belief that the suspect has committed a felony, whether or not in the presence of the arresting citizen.

In the most crime ridden spot in the country, our nation's capitol, District of Columbia Law 23- 582(b) reads as follows:

(b) A private person may arrest another -

(1) who he has probable cause to believe is committing in his presence -

(A) a felony, or

(B) an offense enumerated in section 23-581 (a)(2); or

(2) in aid of a law enforcement officer or special policeman, or other person authorized by law to make an arrest.

(c) Any person making an arrest pursuant to this section shall deliver the person arrested to a law enforcement officer without unreasonable delay. (July 29, 1970, 84 Stat. 630, Pub. L. 91-358, Title II, § 210(a); 1973 Ed., § 23-582; Apr. 30, 1988, D.C. Law 7-104, § 7(e), 35 DCR 147.)

In Tennessee, it has been held that a private citizen has the right to arrest when a felony has been committed and he has reasonable cause to believe that the person arrested committed it. Reasonable grounds will justify the arrest, whether the facts turn out to be sufficient or not. (See *Wilson v. State*, 79 Tenn. 310 (1833).

Contrast this to Massachusetts law, which while permitting a private person to arrest for a felony, permits those acquitted of the felony charge to sue the arresting person for false arrest or false imprisonment. (See *Commonwealth v. Harris*, 11 Mass. App. 165 (1981))

Kentucky law holds that a person witnessing a felony must take affirmative steps to prevent it, if possible. (See *Gill v. Commonwealth*, 235 KY 351 (1930.)

Indeed, Kentucky citizens are permitted to kill fleeing felons while making a citizen's arrest (Kentucky Criminal Code § 37; S 43, §44.)

Utah law permits citizen's arrest, but explicitly prohibits deadly force. (See Chapter 76-2-403.)

Making citizen's arrest maliciously or without reasonable basis in belief could lead to civil or criminal penalties. It would obviously be a violation of a suspect's civil rights to use excessive force, to torture, to hold in unsafe or cruel conditions or to invent a reason to arrest for the ulterior motive of settling a private score.

Civil lawsuits against department stores, police departments, and even cult deprogrammers for false imprisonment are legend. Anybody who makes a citizens arrest should not use more force than is necessary, should not delay in turning the suspect over to the proper authorities, and should never mete out any punishment ... unless willing to face the consequences.

As the ability of the powers that be to hold society together and preserve law and order diminishes, citizen's arrests will undoubtedly be more common as a way to help communities cope with the wrongdoers in out midst.

"Citizens may resist *unlawful* arrest to the point of taking an arresting officer's life if necessary." *Plummer v. State*, 136 Ind. 306. This premise was upheld by the Supreme Court of the United States in the case: *John Bad Elk v. U.S.*, 177 U.S. 529. The Court stated: "Where the officer is killed in the course of the disorder which naturally accompanies an attempted arrest that is resisted, the law looks with very different eyes upon the transaction, when the officer had the right to make the arrest, from what it does if the officer had no right. What may be murder in the first case might be nothing more than manslaughter in the other, or the facts might show that no offense had been committed."

"An arrest made with a defective warrant, or one issued without affidavit, or one that fails to allege a crime is within jurisdiction, and one who is being arrested, may resist arrest and break away. If the arresting officer is killed by one who is so resisting, the killing will be no more than an involuntary manslaughter." *Housh v. People*, 75 Ill. 491; reaffirmed and quoted in State v. Leach, 7 Conn. 452; State v. Gleason, 32 Kan. 245; Ballard v. State, 43 Ohio 349; State v Rousseau, 241 P. 2d 447; State v. Spaulding, 34 Minn. 3621.

"When a person, being without fault, is in a place where he has a right to be, is violently assaulted, he may, without retreating, repel by force, and if, in the reasonable exercise of his right of self defense, his assailant is killed, he is justified." *Runyan v. State*, 57 Ind. 80; Miller v. State, 74 Ind. 1.

"These principles apply as well to an officer attempting to make an arrest, who abuses his authority and transcends the bounds thereof by the use of unnecessary force and violence, as they do to a private individual who unlawfully uses such force and violence." *Jones v. State*, 26 Tex. App. l; Beaverts v. State, 4 Tex. App. l 75; Skidmore v. State, 43 Tex. 93, 903.

"An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right to use force in defending himself as he would in repelling any other assault and battery." (*State v. Robinson*, 145 ME. 77, 72 ATL. 260).

"Each person has the right to resist an unlawful arrest. In such a case, the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self- defense." (*State v. Mobley*, 240 N.C. 476, 83 S.E. 2d 100).

"One may come to the aid of another being unlawfully arrested, just as he may where one is being assaulted, molested, raped or kidnapped. Thus it is not an offense to liberate one from the unlawful custody of an officer, even though he may have submitted to such custody, without resistance." (*Adams v. State*, 121 Ga. 16, 48 S.E. 910).